IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:10-CR-117-ODE-LTW |
| v. | |
| LONDEY FLENORY, | |
| DEFENDANT. | |

## MAGISTRATE JUDGE'S ORDER, FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

This matter is presently before the Court on Defendant's Motion for Jackson-Denno Hearing and Preliminary Motion to Suppress. Docket Entries [36, 37]. The Government filed a response in opposition to Defendant's Motion to Suppress. Defendant's Motion for a Jackson-Denno Hearing is **GRANTED**.[1] Docket Entry [36]. For the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. Docket Entry [37].

### BACKGROUND

On March 18, 2010, a federal grand jury sitting in the Northern District of Georgia returned a five-count indictment against Defendant, charging him with bank robbery by force or violence, use of a firearm during a crime of violence (bank robbery), carjacking by force or violence, and use of a firearm during a crime of violence

---

[1] This Court granted Defendant's request for a Jackson-Denno hearing and held an evidentiary hearing on Defendant's Motion on August 30, 2010. Docket Entry [43].

(carjacking) in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), 2113(a), 2113(d), and 2119. Docket Entry [6].

## FACTS

On December 23, 2009, the Bank of America, a federally insured institution, located at 2693 Powder Springs Road, Austell, Georgia, was robbed resulting in a $41,000 loss to the bank. Docket Entry [6]. On March 10, 2010, Federal Bureau of Investigation ("FBI") Special Agent ("SA") Meihn Triong, other FBI agents, and local police officers went to a residence located at 7239 Susquehanna Street in Pittsburgh, Pennsylvania, with an arrest warrant. (Transcript of Evidentiary Hearing, September 28, 2010 (hereinafter "Tr.") at 4-5, Docket Entry [44]). The agents had an arrest warrant and a driver's license photograph of Defendant Londey Flenory ("Defendant"). (Tr. at 5). The agents encountered Defendant at the residence, and one of the agents asked him his name. (Tr. at 5). Defendant denied being Londey Flenory, and said his name was Ron. (Tr. at 5). SA Triong retrieved Defendant's driver's license photograph from his pocket, showed it to him, and said "this is you." (Tr. at 5-6; Govt's Ex. 1). In response to this statement, Defendant dropped his head, nodded, and said "Yeah." (Tr. at 6). Defendant was arrested and transported to the local FBI office. (Tr. at 6). No further questions were asked of Defendant while he was at the residence or while he was being transported to the local FBI office. (Tr. at 6). Defendant did not make any statements while being transported. (Tr. at 7).

After arriving at the local FBI office, SA Triong, along with FBI Agents John Orlando and John Dziedzic escorted Defendant into a standard, plain interview room. (Tr. at 18). Agent Orlando initially talked to Defendant and explained that the agents

had a warrant for his arrest, they would like to talk to him, and they would probably book him and take him to jail. (Tr. at 19). SA Triong took out a <u>Miranda</u> form and read to Defendant the following:

(1) You have the right to remain silent.

(2) Anything you say can and will be used against you in a court of law.

(3) You have the right to talk with a lawyer and have him present with you while you are being questioned.

(4) If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning.

(5) You can decide at any time to exercise these rights and not answer any questions or make any statements.

(Tr. at 8; Govt's Ex. 2). Defendant appeared to understand his rights and stated "I know my rights, I know the legal system." (Tr. at 19). During the questioning, Defendant was handcuffed behind his back. (Tr. at 9, 27). The agents did not un-cuff Defendant because of his violent [criminal] history. (Tr. at 9, 27). Consequently, although Defendant verbally acknowledged and waived his <u>Miranda</u> rights, he was unable to sign the form stating his acknowledgment and waiver of rights.[2] (Tr. at 9, 27). No weapons were drawn and no promises or physical or verbal threats were used to induce Defendant to make a statement. (Tr. at 13). Defendant did not appear to have any signs of impairment, either due to alcohol or drugs. (Tr. at 25). Defendant was

---

[2] SA Triong testified that there have been other times in which he has interviewed and advised a defendant of his <u>Miranda</u> rights, but did not ask the defendant to sign the <u>Miranda</u> rights form. (Tr. at 30). SA Triong explained that the other times when this occurred, he had a violent subject in custody. (Tr. at 30-31).

3

informed that the agents were there to talk to him about a bank robbery that happened in Atlanta. (Tr. at 20). Defendant was asked if he was involved in the bank robbery, and he responded in the affirmative. (Tr. at 20). Defendant admitted that he was involved and stated "they" made him do it. (Tr. at 21). When questioned about who was "they", Defendant repeated the word "they," and said the following:

> They threaten my life, they threaten my family. They know I have a bank robbery history. I have the knowledge, so they approach me and threaten me about this, and they said if I don't do it they will hurt my family.

(Tr. at 21-22). When asked again who "they" were, Defendant did not give a name; instead he answered "the Bangers." (Tr. at 22). At some point during the interview, Defendant said, "I never took any money from a bank." (Tr. at 24). Agent Dziedzic asked Defendant what did he know about John Patton. (Tr. at 23). Defendant responded, "You know, I take the Fifth on that. I heard the name before, but I take the Fifth on that one." (Tr. at 23). Defendant was also questioned about a gun[3] recovered at the scene when he was arrested. (Tr. at 23). Defendant responded, "I rather not talk about it," and invoked his right to talk to his attorney. (R. at 23). After Defendant invoked his right to counsel, his interview was terminated. (Id.).

## LEGAL ANALYSIS

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

In Defendant's brief in support of his Preliminary Motion to Suppress, Defendant argues that he specifically invoked his Fifth Amendment right against self-

---

[3] The Government indicated in open Court that the firearm seized from Defendant was not going to used in the Government's case-in-chief. (Tr. at 3). The Government also reserved the right to question Defendant about the firearm should Defendant exercise his right testify during his trial. Id.

4

incrimination by refusing to answer whether he knew Mr. Patton. Defendant contends that because he invoked his Fifth Amendment right, his response to the question, "I heard that name before" is inadmissible. Defendant further contends that any additional questions regarding the gun in this case is inadmissible at trial because he invoked his right to counsel. In response, the Government contends that Defendant voluntarily, knowingly, and intelligently waived his Miranda rights.

The Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit the use of an involuntary confession against a defendant in a criminal trial. U.S. CONST. amend. V; U.S. CONST. amend. XIV, cl. 3; Dickerson v. United States, 530 U.S. 428, 434-35 (2000); Bram v. United States, 168 U.S. 532, 542 (1897); United States v. Vera, 701 F.2d 1349, 1365 (11th Cir. 1983). However, it is by now settled that the right to Miranda warnings does not attach until the initiation of custodial interrogation. United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004). A defendant is in custody for the purposes of Miranda when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quotation marks omitted); see also United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001). Using an objective test, which evaluates the totality of the circumstances, a court will find that a defendant was in custody if "a reasonable man in [the defendant's] position would [have felt] a restraint on his freedom of movement . . . to such extent that he would not feel free to leave." McDowell, 250 F.3d at 1362 (quotation marks and alterations omitted). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police

5

should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

When the government seeks to use a confession obtained through custodial interrogation against a defendant, the government must demonstrate that the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights under Miranda. Miranda v. Arizona, 384 U.S. 436, 475 (1966); Hart v. Florida, 323 F.3d 884, 891 (11th Cir. 2003). Whether a waiver was voluntary, knowing, and intelligent presents a two-fold inquiry. Courts assess the voluntariness of the defendant's relinquishment of his rights to see if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986); see also Hart, 323 F.3d at 892. To determine whether the relinquishment was knowing and intelligent, courts must determine whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Burbine, 475 U.S. at 421. A court may only hold that a defendant validly waived his Fifth Amendment rights under Miranda if it finds that "the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension." Id.

The totality of the circumstances test takes into consideration "both the characteristics of the accused and the details of the interrogation" to determine whether police conduct was causally related to the confession. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also Haynes v. Washington, 373 U.S. 503, 513 (1963); Reck v. Pate, 367 U.S. 433, 440 (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"). The court reviews numerous factors under this analysis, including the accused's intelligence, education, age, drug and

alcohol use, psychological problems, and prior experience with the criminal justice system, as well as the length of the detention, the nature of the interrogation, the application of physical force or the threat thereof, and the use of a promise or inducement by police. Hubbard v. Haley, 317 F.3d 1245, 1252-1523 (11th Cir. 2003) (citing United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989)). The court must find government coercion to conclude that a waiver was involuntary. "Absent police conduct causally related to the confession, there is ... no basis for concluding that any state actor has deprived a criminal defendant" of his rights. Colorado v. Connelly, 479 U.S. 157, 164 (1986); United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995).

Applying the law to the facts of this case, this Court finds that the Government did not obtain Defendant's statement "I heard that name before," referring to Mr. Patton, in violation of the Constitution or Miranda. SA Triong testified that he read Defendant his Miranda rights but did not question him until Defendant verbally agreed to waive his rights. (Tr. at 9). Defendant indicated to the agents he understood his rights and stated that he knew the federal legal system very well. (Tr. at 9). Although Defendant invoked his Fifth Amendment right, he also waived his Miranda rights with his spontaneous statement "I heard that name before." (Tr. at 9). No weapons were drawn and no promises or physical or verbal threats were used to induce Defendant to make a statement. (Tr. at 13). Defendant did not appear to have any signs of impairment, either due to alcohol or drugs. (Tr. at 25). Defendant verbally acknowledged and waived his Miranda rights, but was unable to sign the form stating his acknowledgment and waiver of rights because he was in handcuffs. (Tr. at 9, 27). Although Defendant was in handcuffs because of his violent criminal history, Defendant by his spontaneous statement verbally waived his Miranda rights. Thus,

7

Defendant's spontaneous statement to the agents was totally voluntary and clearly outside the protective umbrella of Miranda. See Miranda, 384 U.S. at 478 (holding that volunteered statements of any kind are not barred by the Fifth Amendment); see also Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991) (In the absence of interrogation by law enforcement, "[v]oluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence."). Even if the Defendant invoked his right to remain silent, he may re-initiate communications with the police by expressing a desire to answer questions. Henderson v. Singletary, 968 F.2d 1070 (11th Cir. 1992). This Court finds that statements made by Defendant, including "I heard that name before," were freely and voluntarily given. Accordingly, this Court finds that, under the totality of the circumstances, the agents did not obtain Defendant's statements in violation of Miranda.[4]

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendant's Preliminary Motion to Suppress be **DENIED**. Docket Entry [37]. Defendant's Motion for Jackson-Denno Hearing is **GRANTED**. Docket Entries [36]. There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 14th day of February, 2011.

---

[4] Since the Government has already agreed to not use the firearm recovered from the scene when Defendant was arrested and because the Defendant clearly invoked his right to counsel when asked about the firearm, the Court need not address the admissibility of any statements about the firearm.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LONDEY FLENORY,<br><br>Defendant. | CRIMINAL CASE NO.<br>1:10-CR-117-ODE-LTW |

## **ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b) (1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h) (1) (F), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Act.**

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be

10

adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 14th day of February, 2011.

s/Linda T. Walker<br>
LINDA T. WALKER<br>
UNITED STATES MAGISTRATE JUDGE